UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOBY J. COLEMAN,

    Petitioner,

    v.

KAMALA D. HARRIS, Attorney General of California,

    Respondent.
_____/

No. C-09-5742 EMC (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

    This is a habeas corpus case filed pro se by a state prisoner. The Court ordered Respondent[1] to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is **DENIED**.

---

[1] Petitioner originally named the "People of the State of California" as respondents. However, the rules governing relief under 28 U.S.C. § 2254 require a person in custody pursuant to the judgment of a state court to name the "'state officer having custody'" of him as the respondent. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996) (quoting Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section § 2254). This person typically is the warden of the facility in which the petitioner is incarcerated. *Stanley v. California Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994). Here, however, petitioner was not incarcerated when he filed the petition. He may have been on probation, but if he was he probably no longer is, meaning that his probation officer probably would not be a proper respondent. That he is not incarcerated or on probation does not moot the petition, *see Spencer v. Kemna*, 523 U.S. 1, 8-12 (1998) (courts may presume that a criminal conviction has continuing collateral consequences sufficient to avoid mootness), but it does mean that there is no warden, jailer, or probation officer who would be a proper respondent. The Court therefore has substituted Kamala Harris, the Attorney General, as respondent. *See Silveyra v. Moschorak*, 989 F.2d 1012, 1015 n.3 (9th Cir. 1993) (court may substitute proper respondent sua sponte); *see also* Rule 2(b), Rules Governing Habeas Corpus Cases Under Section § 2254, 1975 advisory committee's note (when petitioner is not incarcerated or on probation or parole, proper respondent is the attorney general).

## I. BACKGROUND

A Lake County jury found petitioner guilty on seven counts: one count of perjury, *see* Cal. Penal Code § 118; one count of solicitation to commit perjury, *see id.* at § 653f(a); two counts of diversion of funds received to purchase labor and materials for a construction project that was not completed, *see id.* at § 484b; and three counts of engaging in the business of acting as a contractor without a license, *see* Cal. Bus. & Prof. Code § 7028. Ex. E (opinion of California Court of Appeal) at 8-9.[2] He was sentenced to five years probation with a condition of probation being that he serve 300 days in the county jail. *Id.* at 8. Another condition of probation was that he pay a $4,500 fine under Business and Professions Code section 7028, subdivision (b), plus a penalty assessment of $12,600. *Id.*

On direct appeal, the California Court of Appeal affirmed as to most of the counts, but reversed as to the solicitation of perjury count. *Id.* at 24. The sentencing court was instructed to "take into account the reversal of [petitioner's] conviction on count 2 [the solicitation of perjury count] when imposing sentence." *Id.* Upon resentencing, petitioner was sentenced to an identical 300-day term in county jail. *People v. Coleman*, No. A128329, 2011 WL 770012, at *5 (Cal. Ct. App. Mar. 7, 2011). Petitioner appealed his sentence, and the new sentence was affirmed on appeal. *Id.* at *6.

On June 5, 2009, petitioner petitioned for rehearing in the Court of Appeal. Ex. F. The California Court of Appeal, First Appellate District denied rehearing on June 22, 2009. Ex. G. On July 6, 2009, petitioner sought review in the California Supreme Court. Ex. H. On September 17, 2009, the California Supreme Court denied review without comment or citation to authority. *See* Ex. I. Petitioner filed his petition in this case on December 7, 2009. Pet. at 6.

The following facts are excerpted from the opinion of the California Court of Appeal:

> **A. Count Seven: Unlicensed Contracting (Espinoza)**
>
> Appellant dropped out of school when he was in the ninth grade, and started doing construction work. He admittedly did not have a contractor's license in 2001 and 2002.

---

[2] Citations to "Ex." are to the record lodged with the court by the Attorney General.

In December 2000, Rafael Espinoza approached appellant about remodeling his garage into an office and a small bedroom. Appellant agreed to do the work for $2,000. When appellant looked at the project, he suggested that he could, instead, convert the garage into a master bedroom for an additional $1,000, so that the whole project would cost a total of $3,000 including materials and labor.[3] Espinoza agreed, and in February 2001, he gave appellant a check for $800 as an initial payment. Appellant wanted a down payment of half the total price, but Espinoza could not afford to give him more than $800. Appellant took a piece of vinyl siding off the garage so that he could try to match it.

Appellant told Espinoza that he could not start working on the project immediately, because he had another job in progress. Around the time Espinoza gave appellant the check, appellant dropped off some framing lumber, sheet rock, insulation, and other materials, and a stove. Espinoza did not make a list of the materials, but estimated that they were worth "not even close" to $800. Appellant, on the other hand, testified that all of the money Espinoza gave him was spent on materials. Appellant left the materials at Espinoza's house, but never returned the piece of siding he had taken.

When appellant told Espinoza that his workers would start on the job the next day, Espinoza replied that he wanted to get a permit for the work first. That was the last contact they had. Appellant testified that he understood Espinoza was going to obtain the permit and then get back to him, but he never heard from him.

**B. Counts Four and Six: Diversion and Unlicensed Contracting (Hill)**

Beverly Smith was a long-time family friend of appellant's, and in the fall of 2002, appellant was living in a house that Smith owned. At around that time, Smith started working at a beauty salon owned by Sherri Hill.

Hill wanted someone to install an additional sink, and to do some other remodeling work in Hill's salon. Smith recommended appellant. On September 18, 2002, Hill and appellant entered into a written contract under which appellant agreed to purchase and install a new countertop and install Smith's existing sink into it; frame, drywall, and paint a wall; change some electrical units, and install some appliance hookups. The price for the job was $1,200, including the cost of materials.

Hill initially paid appellant $500 in advance, and was to pay the balance due when he completed the job. On October 4, 2002, appellant asked Hill to advance him an additional $600 against the contract price so that he could pay what he owed Smith for her house

---

[3] Appellant testified that he did not recall how much he told Espinoza he would charge for the work.

for that month. Hill gave appellant a check in that amount, with Smith's name as the payee.[4]

Appellant never completed the job he had contracted to do for Hill. He did only a little electrical work; some framing, and some of the plumbing. At one point, he explained to Hill that he could not work for three weeks due to an injury, but even after the three weeks were over, he neither came back to finish the job nor contacted Hill.[5] After two months, Hill sent a friend to tell appellant his services were no longer needed, and to get back the key she had given appellant. Hill then paid a friend to install the appliances. Appellant testified that Smith told him not to install the sink he had agreed to put in, because it was not going to be needed after all.

### C. Counts Three and Five: Diversion and Unlicensed Contracting (Flores)

Appellant's contracting job for Bulmaro Flores was the genesis not only of counts three and five, but also, indirectly, of counts one and two. By the time of appellant's trial, Flores had known him for at least eight years, originally as a coworker. In 2001, appellant helped Flores fix a trailer for between $3,000 and $4,000. Flores was satisfied with appellant's work on that project, so when Flores wanted some remodeling work done on an older house he purchased in November 2002, he hired appellant to perform it.

Flores hired appellant to do three phases of work on the house, each for a fixed price that included both labor and materials. Their agreement was not in writing. First, appellant agreed to install doors, windows, and sheet rock in the bedrooms and living room for $7,000. While that work was in progress, appellant agreed that after Flores himself demolished the existing walls and floors in the kitchen and bathroom, appellant would refurbish those two rooms, essentially in their entirety, for $8,000. Finally, appellant agreed to install floor tile in the kitchen for $1,500.[6]

Appellant started Flores's project in November 2002. Flores paid him in installments, starting with a payment of about $3,000 to buy materials. Flores paid appellant in cash, and at first, he did not keep records of what he had paid appellant, but he later decided he wanted to do so. He prepared dated receipts showing that he had paid appellant $6,300 and then another $8,000, as well as a later, undated receipt for $1,300 for the floor tiles. The dates on the first two receipts did not reflect the actual dates on which Flores had made the payments. Appellant admitted signing these receipts, but testified at trial that they were blank at the time, and did not reflect the actual

---

[4] Smith confirmed that appellant turned Hill's check over to her as payment for the house.

[5] Appellant testified that he told Hill his injury would prevent him from working for two months.

[6] Appellant's description of the scope of the work he agreed to do was somewhat at variance with that given by Flores, but the difference is not material to the issues on appeal.

4

price of the work he did. Then, in late December 2002, appellant asked Flores for another $1,000, which Flores paid him without making out a receipt.

Appellant did most of the work he was supposed to do for Flores, but not all of it.[7] The tasks appellant left undone included putting sealing and trim around windows and doors, and installing an interior door, baseboards, electrical outlet covers, and electrical connections for the kitchen appliances. Flores ended up doing these tasks himself, or paying others to do. Flores used his own wood to finish the trim, even though appellant was supposed to provide the materials. Flores gave appellant money to buy a new kitchen sink, but appellant never provided one, so Flores finally told him to reinstall the original one.

Flores was dissatisfied with some aspects of the work appellant did, such as the joints in the sheetrock, the floor tiling, and the toilet installation. When appellant stopped working, he took the unused portion of the materials away. This was all material that appellant had brought to the site for the job, however; none of it belonged to Flores.

### D. Count One: Perjury

Sometime during 2002, appellant apparently fell behind on his child support obligations with respect to his children by two different women, whom we will refer to as the support obligees. In the fall of 2002, the Lake County Department of Child Support Services (DCSS) initiated efforts to collect the delinquent child support payments from appellant. As part of those efforts, appellant was served with an order to attend a judgment debtor's examination (the debtor exam) at the Lake County Superior Court, so that DCSS could inquire into appellant's assets, income, and employment history during the preceding year.

The debtor exam occurred on December 4, 2002. At the debtor exam, appellant was sworn in by the clerk; instructed by a court commissioner to answer under oath all questions put to him; and then directed into a jury room to be questioned by Daniel Sean Navarro, an investigator for the Lake County District Attorney's Office. Appellant's attorney, Karen Evans, went into the jury room with appellant and Navarro, as did the two support obligees. Patricia Shaw White, an attorney with DCSS, came into the jury room about 30 minutes after the debtor exam started, and remained until it ended about 30 minutes later. The debtor exam proceedings in the jury room were not reported by a court reporter or otherwise recorded.

In the jury room, Navarro asked appellant to respond to each question on a three or four-page preprinted form questionnaire used for debtor exams. While he was doing so, the support obligees became upset and accused appellant of giving false answers, and the

---

[7] Appellant testified that at the time he stopped working on Flores's project, the two men had a falling out because Flores still owed him $5,200, and wanted appellant to do additional work without charging for it.

parties began yelling at one another. The resulting noise was loud enough to prompt the court commissioner to send bailiffs to the jury room to restore order.

During the debtor exam, Navarro wrote down appellant's answers as he gave them, both on the questionnaire and on separate pages of notes. By the time of appellant's trial in the current case, which occurred in August 2007, Navarro had little or no independent recollection of appellant's answers, and his testimony was based primarily on his notes. The questionnaire had a space for the debtor to sign under penalty of perjury, but Navarro did not ask appellant to sign it.

Appellant told Navarro that he worked for a plumbing company during part of 2002, but was no longer working there. When appellant explained that he had done some remodeling work, the support obligees mentioned specific jobs, prompting appellant to confirm that he had done a remodeling job for Flores that involved tiling, electrical work, and windows.

According to Navarro's interpretation of his notes, appellant told him that he had charged Flores $5,200 for the entire job, which consisted of $2,200 for materials, $1,500 for other people's labor, and $1,500 for appellant. Some of the information Navarro wrote down in his notes came from the support obligees rather than from appellant, and Navarro did not recall what information came from which source. Navarro was positive that the figures he wrote down about the Flores job came from appellant, however, because the support obligees would not have known that information.

Appellant testified he told Navarro that he did not know how much money he had already received from the Flores job, and that the $5,200 was only what Flores still owed him, not the entire price of the job. White had an "unspecific recollection" that appellant told Navarro that he had done some work for Flores for which appellant had not yet been paid, and it "sound[ed] familiar" to her that appellant gave Navarro a breakdown of what Flores owed him, as between the total cost and the various elements of it.

Navarro did not recall whether he interpreted what appellant told him about the cost of the Flores job to mean that appellant had already collected the money or was still owed it. Navarro was certain, however, that appellant never told him that Flores had paid appellant anything more than $5,200 for the work appellant did for him. Navarro may have asked appellant whether Flores still owed him money for the job, but he was not sure. Navarro did record that appellant answered "No" to a general question as to whether anyone owed appellant any money.[8]

---

[8] Technically, this was true as to Flores, because given appellant's unlicensed status, any promise by Flores to pay him additional funds was legally unenforceable. (Bus. & Prof. Code § 7031; *Great West Contractors, Inc. v. WSS Industrial Construction, Inc.* (2008) 162 Cal. App. 4th 581, 587-88, 76 Cal. Rptr. 3d 8.)

Ex. E at 1-5 (footnotes in original).

## II. STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

When, as is the case with some claims here, "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). And it is not necessary that the state court's decision on the merits be accompanied by reasoning for § 2254(d) to be applied. *Id.* at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

1  incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court
2  making the "unreasonable application" inquiry should ask whether the state court's application of
3  clearly established federal law was "objectively unreasonable." *Id.* at 409.
4      In the discussion below, the Court first considers whether Petitioner's rights were violated; it
5  then applies the AEDPA standard. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (AEDPA does
6  not require federal habeas court to adopt any particular methodology in deciding whether state court
7  decision is contrary to or unreasonable application of clearly established federal law); *Weighall v.*
8  *Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (may be easier in some cases to review state court's
9  application of federal law for error and, if there was none, conclude that state-court decision was not
10 unreasonable).

**III.     DISCUSSION**

A.     Petitioner's Claims

13     Petitioner asserted six claims for relief in his petition. These were: (1) in perjury cases,
14 California law requires corroboration not only of evidence that the statement was false, but of
15 evidence that the statement was made at all; (2) petitioner's statement was not made before a
16 "competent tribunal" as that term is used in the California perjury statute; (3) his Fourteenth
17 Amendment right to due process was violated when the California Court of Appeal relied on facts
18 and theories other than those argued at trial to determine that a witness' testimony had the necessary
19 corroboration; (4) his Fourteenth Amendment right to due process was violated because there was
20 insufficient evidence to support the perjury conviction; (5) his Fourteenth Amendment due process
21 right to notice of the charges and to a jury trial was violated because the Information did not allege
22 prior convictions and no evidence of such convictions was presented; and (6) his right to due process
23 was violated because he was deprived of his state-created right to dismissal of one of the charges
24 based on the expiration of the statute of limitations.
25     In its order to show cause the court dismissed claims one and two are presenting only state-
26 law claims for relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas
27 unavailable for violations of state law or for alleged error in the interpretation or application
28 of state law). The other four claims were allowed to proceed and are discussed below.

### 1. Due Process on Appeal

Under California law, a person cannot be convicted of perjury where proof of falsity rests solely upon testimony of a single person other than the defendant. Cal. Penal Code § 118(b). This is the "corroboration requirement." Proof of falsity may be established by direct or indirect evidence. *Id.* Petitioner contends that the California Court of Appeal violated his right to due process on appeal when it ruled that photographs introduced by the prosecution were sufficient to corroborate Flores's testimony. Pet. at 14-15. Petitioner argues that the ruling was unfair because the trial attorneys did not highlight this particular evidence during their closing arguments and the Attorney General did not call attention to this evidence on appeal. *Id.*

The California Court of Appeal upheld petitioner's perjury conviction based on (1) testimony by Flores that he paid petitioner at least $16,600, compared to petitioner's testimony at the debtor's exam that he was paid only $5200, and (2) photographs of Flores's residence taken by Navarro, which depicted remodeling work worth more than $5,200. Ex. E. at 14. That is, the court found the necessary corroboration in Navarro's photographs. The court reasoned, "[T]here was indirect evidence corroborating Flores's testimony. The prosecution introduced photographs of Flores's house, which were taken and authenticated by Navarro, showing its appearance as of January 2003. The extent of the completed and uncompleted work, as shown in those photographs, was sufficient to corroborate Flores's testimony that appellant contracted with him to do a great deal more than $5,200 worth of remodeling work." Ex. E at 13-14.

The Constitution does not require states to grant appeals as of right to criminal defendants seeking to review alleged trial court errors. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (citation omitted). However, if a state creates a system for appellate review, the procedures must comport with the demands of due process. *Id.*

Petitioner has not pointed to any federal case that supports his contention that the right to due process on appeal bars an appellate court from considering evidence admitted at trial but not emphasized in closing argument or in the briefs on appeal, and the Court has found none. In fact, the Ninth Circuit has held that federal courts must consider *all* the evidence presented at trial in deciding whether substantial evidence supported a verdict; this suggests that state courts may

9

properly do so as well.[9] *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief); *Johnson v. Cullen*, 704 F. Supp. 2d 869, 899 (N.D. Cal. 2010). And in any event, there certainly is no clearly established United States Supreme Court authority that evidence such as that at issue here cannot be considered by a state appellate court, so the state court decisions could not have been contrary to, or unreasonable applications of, clearly established Supreme Court authority. This claim is without merit.

### 2. Sufficiency of the Evidence

Petitioner claims that in finding that the photographs corroborated the falsity of his purported testimony, the Court of Appeal unreasonably applied the federal constitutional requirement that all criminal convictions be proved beyond a reasonable doubt and be supported by legally sufficient evidence. Pet. at 16.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). When reviewing a claim of insufficient evidence in a habeas petition, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Payne*, 982 F.2d at 338. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324.

---

[9] If Petitioner's claim were construed to be that he did not have fair notice that the Court of Appeal would consider the photographs to be significant, such a claim also would be without merit. Petitioner filed a motion for rehearing in the Court of Appeal, by which time he had notice that the photographs had been relied upon as corroboration. As a result he could not have been prejudiced by any lack of notice.

As discussed above, a federal court evaluating the evidence under *In re Winship* and *Jackson* should take into consideration all of the evidence presented at trial. *LaMere*, 458 F.3d at 882. If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. When considering a sufficiency of the evidence claim the court must "view[] the evidence in the light most favorable to the prosecution." *Id.* at 319.

Petitioner's assertions relating to his sufficiency of the evidence claim are premised on his claim that the photographs of Flores's house were not a permissible basis for the Court of Appeal's holding. However, as discussed above, this is incorrect. *See LaMere* 458 F.3d at 882 (federal habeas court ruling on sufficiency of evidence claim must consider all evidence in record). With the photographs, there was sufficient evidence to support the verdict, and no due process violation.[10]

Because there was no due process violation, the state appellate courts' rejections of this claim could not have been contrary to, or unreasonable applications of, clearly established Supreme Court authority.

3. <u>Right to Notice of Charges</u>

Petitioner contends that the condition of his probation that required him to pay a $4,500 fine plus $12,600 in penalty assessments was improper because the prosecution neither pleaded nor proved that he had a prior conviction for unlicensed contracting. Ex. E at 21.

a. <u>Procedural Default</u>

On appeal, Petitioner contended that he was not given notice that his prior conviction would be relied on as the basis for a fine until he received the probation report. Ex. E at 21. The Court of Appeal held that Petitioner's challenge to the fine as a condition of probation was barred because he

---

[10] Petitioner's claim that California law requires corroboration that he made the purportedly perjured statement was dismissed in the order to show cause. Even if the issue were in the case, however, it would be without merit. As the court of appeal noted, the evidence that petitioner made the false statement was corroborated by the testimony of Patricia White, an attorney for Lake County Department of Child Support Services, who was present for part of the examination. Ex. E at 14.

failed to object at trial. Ex. E at 21. The court did not evaluate the claim on the merits. *Id.* Respondent contends that Petitioner's failure to contemporaneously object was a procedural default of the claim. Resp't P & A at 11.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where counsel failed to object at trial. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (holding petitioner barred from challenging admission of evidence for failure to object at trial); *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004) (holding petitioner barred from challenging jury instruction for failure to object at trial); *Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir. 1999) (holding petitioner barred from challenging denial of peremptory challenges for failure to contemporaneously object). The Ninth Circuit ruled that "federal habeas claims must be dismissed where state courts have decided the claim on state procedural grounds." *Inthavong*, 420 F.3d at 1058 (citing *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002)).

In this case, the Court of Appeal declined to address Petitioner's objection to the fine based on state procedural grounds because it was first brought on appeal and had not been raised at the time of sentencing. Ex. E at 23 (citing *People v. Welch*, 5 Cal. 4th 228, 234-38, 851 P.2d 802, 808 (Cal. 1993) ("failure to timely challenge a probation condition . . . in the trial court waives the claim on appeal")). Upon receiving his sentence, Petitioner asked the court not to impose the $4,500 fine and $12,600 penalty because it was "an awful steep penalty." Ex. B at 600. However, Petitioner did not object to the fine on the grounds of due process, inadequate advisement, or failure of proof. Ex. B at 600; Resp't P & A at 13. The Court of Appeal concluded that the Petitioner waived his claims of insufficient pleading and proof by failing to raise them in the trial court. Ex. E at 22. Thus, the claims are procedurally defaulted. Resp't P & A at 13.

### b. Custody Requirements

Alternatively, the Court holds that petitioner's claim does not go to the fact of his incarceration or the length of it, and thus cannot be grounds for habeas relief.

The term "in custody" appears twice in 28 U.S.C. § 2254(a), with two different requirements. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). The first usage (*i.e.*, that the petition be filed "'in

behalf of a person in custody'") requires that there be a restraint on the petitioner's liberty. *Id.* at 978-79. The second usage (*i.e.*, that the application can be entertained "'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States'") requires "a nexus between the petitioner's claim and the unlawful nature of the custody." *Id.* at 979-80. For the second requirement to be satisfied, success on the claim must result in a change in the restraint on the petitioner's liberty. *See id.* at 980 (second custody requirement not satisfied for claim that counsel was ineffective in not objecting to restitution order because success might cause money award to be set aside but would not affect any restraint on petitioner's liberty). That Petitioner is subject to probation and is facing a 300-day jail sentence does not confer jurisdiction on a federal court to review non-custodial aspects of a sentence or condition of probation. *See id.* at 981. Granting Petitioner a writ of habeas corpus on this claim would not result in a change in his liberty, but would only change his obligation to pay the fine imposed as a condition of his probation.[11] Thus, because there is no nexus between Petitioner's claim and his custody, his challenge to his fine cannot be entertained here. This claim is rejected.

    4.    <u>Statute of Limitations</u>

Petitioner contends that state statute of limitations had run on the diversion of funds charges, so convicting him on those counts was a violation of due process. Pet. at 18-20.

Petitioner was convicted of two counts of diversion of funds, a violation of section 484b of the California Penal Code. Ex. E at 2-3, 24. "Section 484b is a so-called "wobbler" offense: if the amount of funds diverted is $1,000 or more, it can be either a felony or a misdemeanor. The crimes alleged in counts 3 and 4 occurred in 2002. Appellant was first charged with these crimes by means of a complaint filed on November 8, 2004, which charged both counts as felonies. At the conclusion of the preliminary hearing, however, on October 7, 2005, the judge granted appellant's motion to reduce these counts to misdemeanors. They were then recharged as misdemeanors in the

---

[11] That petitioner might be confined at some point in the future if he fails to make the payments does not affect this analysis. *See Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987) ("While every criminal fine raises the possibility of confinement if not paid, such potential confinement is considered too speculative to warrant federal habeas protection.") (cited with approval in *Bailey*, 599 F.3d at 979).

information filed on October 14, 2005." Ex. E (opinion of Court of Appeal) at 16. "The statute of limitations for section 484b as a felony is three years; as a misdemeanor, it is one year. (See §§ 801, 805, subd. (b.)" *Id.* at 17.

Petitioner argued on appeal that the one-year statute of limitations should bar the prosecution from bringing these charges because his diversion of funds felony charges were dismissed and later recharged as misdemeanors. *Id.* at 16-17. The Court of Appeal flatly rejected petitioner's argument, holding, "the felony statute of limitations applies where, as here, the crime is initially pleaded as a felony but later recharged as a misdemeanor." Ex. E at 17-18. *See People v. Mincey*, 2 Cal. 4th 408, 453 (1992) ("If the offense is [a wobbler] initially charged as a felony, the three-year statue of limitation for felonies . . . applies, without regard to the ultimate reduction to a misdemeanor after the filing of the complaint."). A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Thus, the charges were not barred by California law.

Because the predicate for Petitioner's argument, that the charges were barred by California law, is incorrect, his argument that his due process rights were violated fails. The state appellate courts' rejections of this claim thus were not contrary to, or unreasonable applications of, clearly established Supreme Court authority.

B.      Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that enters a final order adverse to a petitioner to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A COA will be denied. Coleman is advised that he may not appeal the denial, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

### IV. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability is **DENIED**. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: July 12, 2012

_____
EDWARD M. CHEN
United States District Judge